**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** : | |
| : | **3:16-CR-85** |
| **v.** : | |
| : | **(JUDGE MANNION)** |
| **JEFFREY GUZMAN,** : | |
| **Defendant** : | |

## MEMORANDUM

### I.   BACKGROUND

On May 11, 2020, defendant Jeffrey Guzman filed, through counsel, a Motion to Reduce Sentence based on the First Step Act of 2018, which is construed as a Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A). In his motion, Guzman requests his immediate transfer to home confinement with his mother in Scranton, Lackawanna County, Pennsylvania, related to his 96-month sentence, due to his underlying medical conditions and the COVID-19 pandemic. (Doc. 340).[1] In particular, Guzman seeks the court to immediately release him from confinement in prison at FCI-Otisville, New York, to home confinement and, he alleges compelling and extraordinary reasons exist to justify his compassionate

---

[1] The court notes that although Guzman does not specifically cite to §3582(c)(1)(A) as the statutory basis for his motion, it is clear his motion is intended to be a motion for compassionate release pursuant to the stated statute.

1

release due to his fear that he may contract the COVID-19 virus in prison based on the close proximity of the inmates to each other and, his fear that if he does, based on his alleged chronic medical conditions, he will be at greater risk to suffer more severe consequences. Guzman also attaches to his motion copies of his March 30, 2020, April 1, 2020, and April 3, 2020 inmate administrative remedy requests for compassionate release based on the COVID-19 virus he filed with Warden Petrucci at FCI-Otisville pursuant to the CARES Act and the First Step Act.

Guzman contends that his motion is now properly before this court and that this court has jurisdiction over it since more than 30 days have passed since the Warden received his formal request for compassionate release and he has not responded to it and did not file a motion on his (Guzman's) behalf.

The government was directed to respond to Guzman's motion and it filed its brief in opposition on May 15, 2020, with attached Exhibits 1-4. (Doc. 342 & Docs. 342-1 to 342-4), including Guzman's BOP medical records. Initially, in its brief, (Doc. 342 at 11), the government states that:

> There is no dispute that Guzman filed a request for compassionate release on April 1, 2020. *See* Gov. Ex. 1 [Doc. 342-1] at 5; Def. Mot. at ¶4; Def. Ex. 2. The undersigned has been informed by an attorney in the BOP General Counsel's office that the request has been denied, but not until after the required 30 day time period to exhaust administrative remedies had run [i.e., Guzman's request for Compassionate Release/Reduction In Sentence based on the COVID-19 pandemic under §3582(c)(1)(A) and Program Statement 5050.50 was not responded to and denied by Warden J. Petrucci until May 15, 2020]. Ex. 4 [Doc. 342-4]. Thus, this Court has jurisdiction to hear Guzman's motion.

2

As such, exhaustion of Guzman's administrative remedies with the federal Bureau of Prisons ("BOP") is not an issue in this case, and the court has jurisdiction over his motion under §3582(c)(1)(A)(i).

After considering the merits of Guzman's motion as well as the factors set forth in 18 U.S.C. §3355(a) and whether extraordinary and compelling reasons exist for compassionate release, the court will deny the motion.

To the extent Guzman is seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.

## II. DISCUSSION[2]

In his present motion, (Doc. 340), Guzman seeks his immediate transfer from FCI-Otisville to home confinement and requests the court to allow him to serve the remainder of his prison sentence in home confinement

---

[2] Since the complete background of this case is stated in the government's brief, (Doc. 342 at 1-2), the court does not repeat it herein. Suffice to say that Guzman is currently serving a 96-month prison sentence that was imposed on September 27, 2017, after he pled guilty to conspiracy to distribute and possess with intent to distribute 100 grams and more of heroin and 28 grams and more of cocaine base, in violation of 21 U.S.C. §846, and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §924(c). The court also ordered Guzman to be on four years of supervised release. Guzman's BOP projected release date is March 4, 2023.

3

stating that he is at a higher risk to contract the COVID-19 virus based his alleged chronic medical conditions, including "severe asthma", "a compromised immune system", an abnormal EKG, and nasal polyps. He states that he is prescribed an inhaler and that due to his medical conditions his immune system is compromised making him much more vulnerable to contract "the COVID-19 contagious disease." Further, Guzman alleges that he has served over half of his prison sentence and that he has about 2.5 years remaining on his sentence. He also alleges the court should grant his motion for compassionate release based on the extraordinary and compelling reasons in light of his medical conditions and his fear that if he does contract the COVID-19 virus he will suffer more severe complications from it due to his conditions. Guzman also appears to allege that based on the prison setting social distancing cannot be practiced and, inmates are in close proximity to each other. Further, Guzman states that his "conviction is for a drug crime and possessing a firearm related to drugs", and that "[h]e is not a dangerous person and he poses no danger to any person nor to the public at large."

As such, Guzman contends that "his particular health problems and the COVID-19 emergency warrant granting [his request for release to home confinement]" since "he would be at much less risk of contracting the potentially deadly COVID-19 virus."

Guzman also references the CARES Act, §12003(b)(2), which directs the BOP to identify suitable inmates for home confinement with COVID-19

risk factors. Thus, the court construes Guzman as also claiming that he is the type of inmate who meets the criteria for release to home confinement due to the COVID-19 pandemic.

Guzman concludes that based on the alleged conditions of FCI-Otisville and his medical conditions an "extraordinary and compelling" situation exists in his case for the court to direct the BOP to immediately place him in home confinement to complete the service of his prison sentence.[3]

As the court in United States v. Epstein, 2020 WL 2537648, *2 (D.N.J. May 19, 2020), explained:

> Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. Dillon v. United States, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. §3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate

---

[3]The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. In Lackawanna County, where Guzman wishes to be placed on home confinement with his mother, as of May 27, 2020, it has 1511 confirmed COVID-19 cases and 133 deaths. *See* Pa. Dept. of Health website. In FCI-Otisville as of May 27, 2020, 12 staff members and 14 inmates tested positive for COVID-19 and recovered from the virus, and 1 staff member currently tested positive. There have been no deaths of any staff or inmates at the prison. Thus, Guzman has not established that he would be less vulnerable to COVID-19 and would be "at much less risk of contracting [the virus]" if he was released to home confinement, as he alleges. (Doc. 340 at 6).

release for "extraordinary and compelling reasons." 18 U.S.C. §3582(c)(1)(A)(i).

The First Step Act, §3582(c)(1)(A)(i), provides in relevant part:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

Thus, "a defendant seeking a reduction in his sentence under the First Step Act ["FSA"] 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.'" *Id.* (citation omitted). As stated, Guzman's motion is properly before the court since 30 days lapsed after he submitted his request to the Warden and he did not receive a timely response.

6

The government states that "[t]he United States Sentencing Guidelines Manual sets forth the policy statement for compassionate release in §1B1.13." (Doc. 342 at 11). However, as the court in Epstein, *id.* at *3, pointed out, "the Sentencing Commission had defined th[e] term ["compelling and extraordinary reasons"] as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act." (citing United States v. Rodriquez, —— F. Supp. 3d ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), §1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018)). In any event, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under §3852(c)(1)(A).'" *Id.* (citation omitted). "The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." *Id.* (citing U.S.S.G. §1B1.13, Application Note 1).

In the instant case, as in Epstein, *id.* at *3, Guzman seeks compassionate release based on his medical conditions, as such, he "may show extraordinary and compelling reasons for release … where (1) '[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced

illness with an end of life trajectory),' or (2) he or she is[:] (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (citation omitted).

Under the FSA, the court is also required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" *Id.* at *3 (citing §3582(c)(1)(A)). As in Epstein, *id.*, the following factors in §3553(a)(1) and (2), apply to the present case:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct.

Here, the court finds that Guzman's criminal drug trafficking conduct along with possessing a weapon in furtherance of this conduct was severe and that contrary to his allegation, he is indeed a danger to the community. As the government states in its brief, (Doc. 342 at 18-19):

> Further, Guzman has failed to establish that he is not a danger to the community. USSG §1B1.13(2). Guzman states, in conclusory fashion, that he is not a dangerous person, directly after acknowledging that he

was convicted of a drug trafficking felony and possession of a firearm in furtherance of drug trafficking. Those are serious crimes, and absolutely present a danger to the community. Guzman was detained throughout the prosecution of his criminal case. He has amassed a long criminal history over the course of a decade, earning a Criminal History Category of V. PSR ¶38-53. FCI Otisville reports that, while incarcerated, Guzman has been sanctioned for fighting. Ex. 3; Ex. 4 at 1[Docs. 342-3 & 342-4]. BOP assess Guzman's risk of recidivism as "High Risk" [and indicates that he "has a history of violence"]. [Doc. 342-4] Ex. 4 at 2. [*See also* Doc. 342-4 for Guzman's numerous previous convictions.]

Also, of significance is the fact that while Guzman's proposed home plan, if he is released, is to live with his mother. As the government states this "should not give the Court comfort, as [Guzman's mother] was a co-conspirator and also entered a guilty plea in this case." (Id. at 19). Guzman has failed to meet his burden to show that he is not a danger to the community and, to the contrary, he appears to indeed be a danger. Additionally, the BOP reports that Guzman has served only "50.6% of his sentence." (*See* Doc. 342-4 at 1-2). The court finds that "the need for [Guzman] to serve the remainder of his sentence still exists to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense'", and thus, "the section 3553(a) factors weigh against [his] release to home confinement." Epstein, at *3 (citing §3553(a)).

The court now addresses whether Guzman has demonstrated extraordinary and compelling reasons for compassionate release, under the FSA, based on his medical conditions.

9

The court reviewed Guzman's BOP medical records submitted by the government, (Doc. 342-2), and no doubt he has asthma a condition that may make him more susceptible to acquire COVID-19 and suffer more severe complications if he did contract COVID-19, (*see* Doc. 342-4 at 5), but as the government points out, (Doc. 342 at 15), Guzman is "prescribed only a rescue [albuterol] inhaler, and requires no daily medications to manage and control the condition" and "[b]oth his cardiovascular and pulmonary health were consistently assessed as 'Within Normal Limits,'" despite his history of asthma. Further, the records indicate that Guzman has not been hospitalized for his asthma and only uses his albuterol inhaler twice per week. Guzman does not have severe asthma as he alleges based on his medical records and he failed to offer any evidence showing that it is severe. Rather, Guzman's asthma appears mild and under control. An x-ray of Guzman's lungs in September 2019 revealed "no radiographic evidence for an acute cardiopulmonary process" and that his lungs were "clear." (Doc. 342 at 79). Further, he has no COPD, no cardiovascular disorder, no diabetes, and no hypertension. (Id. at 22, 29).

Also, as the government states, "[t]here is no evidence that [Guzman] has been diagnosed with a compromised immune system", as he alleges without support, despite the prescription for Vitamin D. (Id. at 16). Nor are Guzman's nasal polyps that were treated with steroid nasal sprays and were scheduled to be removed a recognized risk factor. (Doc. 342-2 at 3-8). *See* "People Who Are at Higher Risk for Severe Illness,"

https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html.

Tara Grove, Assistant Health Services Administrator at FCI-Otisville, who reviewed Guzman's medical records on April 29, 2020 regarding his request for compassionate release due to COVID-19, found that while his asthma was an underlying medical condition making him more susceptible to acquiring COVID-19, she did not report him as having any other "underlying conditions [making him more vulnerable as he alleged] of … weakened immune system, nasal polyps, heart problems, and abnormal EKG." (Doc. 342-4 at 5).

Additionally, Guzman's records note that although an EKG showed sinus arrhythmia, he has no chest pain and "he exercises daily without chest pain or [shortness of breath]," and that he is "[a] 29-year old man with mild, well-controlled asthma who exercises daily without negative impact on his health." (Doc. 342 at 16) (citing Doc. 324-2 at 8).

Thus, as the government concludes, Guzman "is not at an elevated risk for COVID-19" and his medical conditions do not qualify "as an extraordinary or compelling reason warranting [his] release." (Id. at 16-17) (string citations omitted). The court concurs.

In fact, in Epstein, *id*. at *2, the defendant, also an inmate at FCI-Otisville, who had contracted COVID-19 and recovered, was much older than Guzman and suffered from much more serious conditions, namely, he was "74 years old and suffers from numerous underlying conditions,

including heart disease, hypertension, diabetes, renal impairment, and obesity, that are known comorbidities for COVID-19." Nonetheless, the New Jersey district court in Epstein, *id.* at *4, found "that Defendant's conditions are being properly managed by the BOP at Otisville and that Defendant has not demonstrated extraordinary and compelling reasons for his release to home confinement."

In the present case, Guzman's medical records demonstrate that he, like Epstein, is being properly treated for his conditions at FCI-Otisville, and that he does not have any medical conditions which are so severe that they could be considered "extraordinary or compelling." *See id.* at *5.

Moreover, Guzman, like the defendant in Cordaro, 2020 WL 2084960, *5, claims, without support (except as to asthma), that he has several underlying chronic medical conditions putting him at a higher risk if he does contract COVID-19, and that based on his alleged conditions, and his allegation that FCI-Otisville is not adhering to the safety measures to protect inmates from contracting the virus, contends that there are "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i). Nonetheless, as in Cordaro, 2020 WL 2084960, *5, Guzman has not been exposed to the COVID-19 virus at FCI-Otisville, nor has he controverted with any evidence the substantial steps identified in the government's brief, (Doc. 342 at 2-8), that the BOP is taking to protect the health and safety of both inmates and staff at the prison as well as all of the

federal prisons.[4] Also, as noted, "FCI Otisville has no active cases of COVID-19 among inmates and one positive case among staff. Additionally, [14] inmates and [12] staff members have previously tested positive for COVID-19 and have since recovered. FCI Otisville has recorded no COVID-19-related deaths." (Doc. 342 at 8).

As the court in Epstein, *id.* at *6, concluded, "[m]ere 'speculation concerning possible future conditions does not constitute a 'compelling reason' for release." (citing United States v. Veras, 2020 WL 1675975, at *4 (M.D.Pa. Apr. 6, 2020); *see also* Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

As such, the court finds that Guzman has not met his burden and has failed to show that extraordinary and compelling reasons exist warranting his release from prison to home confinement.

---

[4] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro, *supra* (citing Doc. 544 at 15-18), and since many of the measures are found on the BOP's websites cited in the government's brief, they are not repeated herein. Also, as directed, the government details the BOP's protocols it enacted to protect inmates and staff at federal prisons, including FCI-Otisville, as well as the citations and links to the BOP's websites. (Doc. 342 at 2-7). *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

Finally, to the extent Guzman is deemed as relying on the CARES Act, (*see* Doc. 340 at 6), which was signed into law on March 27, 2020, such reliance is misplaced.

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum

amount of time for which the Director is authorized to place a prisoner in home confinement ....." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

As this court recently stated in Cordaro, 2020 WL 2084960, *7, "the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citing United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same). Thus, "[c]ourts … do not have power to grant relief under Section 12003 of the CARES Act." *Id.* (citations omitted); United States v. McCann, 2020 WL 1901089, *3 (E.D.Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of

15

home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted).

### III. CONCLUSION

Based on the foregoing, Guzman's motion for compassionate release under §3582(c)(1)(A)(i), **(Doc. 340)**, is **DENIED**. Further, insofar as Guzman is challenging the decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 5, 2020**
16-85-02